AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>8400 INDUSTRIAL PARKWAY, SUITE C, PLAIN CITY,<br>OHIO 43064 | )<br>)<br>)  Case No.  2:23-mj-277<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See attachement A, which is fully incorporated herein.

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized):*

See attachment B, which is fully incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code<br>Section 952 | Importation of a Schedule I controlled substance |

The application is based on these facts:

See Attached Affidavit incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ryan M Marvich, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __April 24, 2023__

City and state: __Columbus, Ohio__

_____
Kimberly A. Jolson
United States Magistrate Judge

## ATTACHMENT A
## DESCRIPTION OF LOCATION TO BE SEARCHED

The target location is 8400 Industrial Parkway Ste C, Plain City, Union County, OH 43064. It is described as a gray block and steal warehouse with black trim. The building consists of approximately 41,000 square feet of office and warehouse space, which includes several commercial loading bays. The entrance to the parking area is located on Industrial Parkway and is marked with a sign which says MIDWEST MOLDING INJECTION MOLDING with the numbers 8400. Suite C is under a red awning just to the left of the bay entrance marked with a number 5.  There is also a white paper posted next to the door for suite C which states Excel Logistics LLC 8400 Industrial Parkway Ste C. The north side (rear side) of the building contains five (5) pedestrian exit doors, spaced approximately 30 feet apart.

## ATTACHMENT B

## ITEMS TO BE SEIZED

All items found at the location described in Attachment A that relate to violations of Title 21 U.S.C. § 952(a), including:

A. Any and all controlled substances.

B. Any and all logbooks, records, payment receipts, notes, and/or customer lists, ledgers, and other papers relating to the transportation, ordering, purchasing, processing, storage, and distribution of controlled substances; all records of assets, liabilities, income, and expenses;

C. Any and all papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to travel to obtain and distribute narcotics and narcotics proceeds. Evidence of such travel is often times maintained by drug traffickers in the form of airline receipts, bus tickets, automobile rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, logs, travel agency vouchers, notes, cellular telephone tolls, and records of long-distance telephone calls;

D. Cellular device with associated telephone number 614-558-0198.

E. Any and all books, records, invoices, receipts, records of real estate transactions, financial statements, bank statements, canceled checks, deposit tickets, passbooks, money drafts, withdraw slips, certificates of deposit, letters of credit, loan and mortgage records, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, wire transfer applications and/or receipts, fictitious identification, and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money. Records of all assets purchased, obtained, and sold, all liabilities incurred or disposed of, and all expenditures paid either for the subjects, their nominees, or entities.

F. Any and all electronic equipment, such as cellular telephones, palm pilots, electronic PDA's (personal diaries and address books), currency counting machines, pagers (digital display

1

beepers), telephone answering machines, telephone caller identification boxes, video and audio cassette tapes, and any stored electronic communications contained therein;

G. Any and all photographs, including still photos, negatives, video tapes, films, undeveloped film, and the contents therein, slides, in particular, photographs of co-conspirators, of assets and/or narcotics;

H. Any and all address and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers, sources of supply, storage facilities, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists;

I. Any and all computers, server, storage media, and peripheral equipment of any kind, and all of the contents thereof, including but not limited to tapes, cassettes, hardware, software, manuals, computer disks, compact disks, DVD disks, external hard drives, disk drives, thumb drives, monitors, printers, modems, routers, scanners, and computer programs of any kind and in any form, as well as indicia of the use or ownership of same; and

J. The opening and search, and removal, if necessary, of any safe or locked receptacle or compartment, in which some or all of the items listed herein may be maintained.

The items described herein include evidence in all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

As used above, the term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

As used above, the term "storage media" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

**Special instruction regarding computer systems used by HIYES, FORTUNE STAR INTERNATIONAL TRADE & LOGISTICS AND/OR EXCEL LOGISTICS INC. FORTUNE STAR INTERNATIONAL TRADE & LOGISTICS AND EXCEL LOGISTICS INC. for business operations. Should such systems have to be physically removed for mirroring, law enforcement shall make all reasonable efforts to provide files necessary to on-going. business operations available to FORTUNE STAR INTERNATIONAL TRADE & LOGISTICS AND/OR EXCEL LOGISTICS INC. FORTUNE STAR INTERNATIONAL TRADE & LOGISTICS AND EXCEL LOGISTICS INC. as soon as practicable. Further, the Government will return any computers or electronic storage devices removed from the Premises described in Attachment A within 30 days of the removal thereof, unless contraband is found on the removed computer and/or electronic storage device, or unless otherwise ordered by the Court.**

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF
THE PROPERTY LOCATED AT 8400
INDUSTRIAL PARKWAY, SUITE C,
PLAIN CITY, OHIO 43064

Case No. _2:23-mj-277_____

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Ryan Marvich, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      Your Affiant is a sworn Special Agent with the United States Department of
Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland
Security Investigations (HSI). Your Affiant has been a Special Agent within DHS since the
Department's creation in May 2003.  Your Affiant has been assigned to the HSI Columbus office
since February 2008, where your Affiant has been involved with narcotics investigations. Prior
to becoming a Special Agent with HSI, your Affiant served as an Officer with the United States
Secret Service, Uniformed Division beginning in January 1998.  In June 1999, your Affiant
accepted a position as a Special Agent with the United States Secret Service. In May 2003, your
Affiant transferred employment to become a Special Agent with the United States Customs
Service (USCS). In 2003, under the creation of the Department of Homeland Security, various
components, including criminal investigators/special agents, with the USCS were merged with

1

components, including criminal investigators/special agents, from the United States Immigration and Naturalization Service (INS) and formed U.S. Immigration and Customs Enforcement (ICE). Since then, criminal investigators/special agents and all related investigative functions of ICE have been moved into Homeland Security Investigations (HSI) within ICE.

2.      Your Affiant is familiar with the operation of illegal drug trafficking organizations in central Ohio and how these drug traffickers utilize international shipping companies in furtherance of their drug trafficking activity.

3.      I have personally participated in the investigation set forth below. The facts in this affidavit come from my personal observations, training, and experience, as well as review of documents and information obtained from other law enforcement personnel and witnesses. When I rely on statements made by others, such statements are set forth only in part and in sum and substance unless otherwise indicated. I believe the information to be true and reliable.

## PURPOSE OF AFFIDAVIT

4.      I am participating in an investigation concerning an organized group of individuals who are suspected of involvement in criminal offenses against the United States, namely Importation of a Controlled Substance in violation of Title 21 U.S.C. § 952(a).

5.      The information set forth in this affidavit is based upon my knowledge, training, experience, and participation in investigations involving the smuggling, possession, distribution, and storage of narcotics and narcotics proceeds.  This information is also based on the knowledge, training, experience, and investigations conducted by fellow law enforcement officers, who have reported to me either directly or indirectly.  I believe this information to be

2

true and reliable. I know it is a violation of Title 21 U.S.C. § 952(a) for any person to import a controlled substance into the United States.

6.      The information contained in this affidavit is based upon my personal participation in this investigation, information obtained from other agents, officers and detectives assisting in this investigation, and my review of records, documents, and other material relating to this investigation.

7.      Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the business located at 8400 Industrial Parkway, Suite C, Plain City, Ohio 43064 currently contains evidence of the above-mentioned offenses. 8400 Industrial Parkway, Suite C, Plain City, Ohio 43064 is located within the Southern District of Ohio.


## FACTS ESTABLISHING PROBABLE CAUSE

8.      **Shipment #1** - On March 15, 2023, Customs and Border Protection (CBP), at Los Angeles International Airport (LAX), inspected and seized a shipment sent on March 1, 2023, via Air Canada Cargo Shipment, originating from China and destined for Plain City, Ohio. This shipment was manifested as containing "Mobile Phone Shell." Upon inspection, CBP Officers found a mis-manifested shipment which contained 15.01 kilograms of a white powdery rock-like substance which field tested positive for N, N-Dimethylpentylone Hydrochloride. Investigators know that N, N Dimethylpentylone Hydrochloride, also known as DMP, is a psychoactive substance that has gained attention in recent years due to its increasing popularity in the drug

3

market. DMP belongs to the cathinone class of drugs and shares some structural similarities with other popular psychoactive substances like amphetamines and MDMA. N, N Dimethylpentylone Hydrochloride is an isomer of *N*-Ethylpentylone which is a Schedule I controlled substance. *N*-Ethylpentylone, including its salts, isomers, and salts of isomers, is controlled in schedule I of the Controlled Substances Act. Evidence indicates that *N*-Ethylpentylone, is abused for its psychoactive effects. Abuse of *N*–Ethylpentylone has resulted in emergency department visits and fatal overdoses. This shipment was addressed to Hiyes+16450, 8400 Industrial Parkway Ste C, Plain City, OH 43064. Also located in the shipping manifest for this shipment was the telephone number 614-558-0198.

9.     Law enforcement database checks on telephone number 614-558-0198 shows that this telephone is linked to a Chao Ricky Lu and a Cindy Xin Wang both residing in Dublin, Ohio. Additional law enforcement database checks for 8400 Industrial Parkway Ste C, Plain City, OH 43064, show a possible inactive business called Hiyes Logistics, however, checks with the Ohio Secretary of State's Office show no records of a company called "Hiyes Logistics" or "Hiyes" or "Hiyes 16450" ever being incorporated within the State of Ohio.

10.     **Shipment #2** - On April 9, 2023, U.S. Customs and Border Protection (CBP) officers assigned to the Los Angeles International Airport (LAX) intercepted an inbound shipment manifested as "Cell Phone Case." The shipment originated from China and was again destined to Hiyes+16450, 8400 Industrial Parkway Ste C, Plain City, OH 43064. Upon inspection, CBP Officers found a mis-manifested shipment which contained approximately 160 kilograms (352.73 pounds) of a white powdery rock-like substance which field tested positive for N, N Dimethylpentylone Hydrochloride, a Schedule I controlled substance. Also located in

4

the shipping manifest for this shipment was the same telephone number which was on Shipment #1, 6145580198, which was linked to Chao Ricky Lu and Cindy Xin Wang.

11.     On April 14, 2023, HSI agents visited 8400 Industrial Parkway Ste C, Plain City, Ohio in an attempt to determine if a business named Hiyes, or a variation of the name Hiyes was operating at that location. Upon arriving at this location, investigators observed a sign adjacent to the front door of Suite C listing "Excel Logistics Inc, 8400 Industrial Parkway Ste C". Investigators also located a mailbox believed to be for Suite C listing Fortune Star International Trade & Logistics and Excel Logistics Inc. Investigators could find nothing to indicate that a company called Hiyes, or a variation of the name Hiyes was operating at that location.

12.     Law enforcement databases show that Fortune Star International Trade & Logistics Inc. is currently located at 8400 Industrial Parkway, Ste C, Plain City, OH 43064. This company was reported to be an active interstate freight carrier, authorized to move property under Ohio Department of Transportation (ODOT) #3097925, specializing in same day and next day delivery of dry van freight. Chao Ricky Lu was reported as the Incorporator and General Manager. This is believed to be the same Chao Ricky Lu whose telephone number was listed on the shipments containing the N, N Dimethylpentylone Hydrochloride.

13.     Utilizing law enforcement databases, investigators conducted research on the incoming international shipments to 8400 Industrial Parkway Plain City, OH. Using the time frame from September 26, 2022, until April 19, 2023, investigators learned that there were 848 shipments with the Bill Consignee name listed as Hiyes or a variation of Hiyes. The overwhelming majority of these shipments originated in China, followed next by Hong Kong. Of these shipments, 95 listed telephone number, 614-558-0198, which is linked to Chao Ricky Lu.

5

14.     On April 12, 2023, investigators contacted an individual (Hereafter referred to as Confidential Source (CS) #1) that owns and operates a business in close proximity to 8400 Industrial Parkway, Suite C, Plain City, OH. After investigators introduced themselves, CS#1 asked investigators if they had questions about the business located at 8400 Industrial Parkway, Suite C. Investigators asked CS#1 why he/she would think they were there for the business located in Suite C? CS#1 stated that he/she had received a UPS parcel by mistake on a prior occasion intended for 8400 Industrial Parkway, Suite C.  CS#1 stated he/she believed the name on the box was "Ricky". Investigators showed CS#1 a picture of Chao Ricky Lu and CS#1 stated that he/she was the person with whom she spoke while inside the warehouse. CS#1 also stated that when he/she entered the warehouse, he/she was "afraid I wouldn't come out alive". CS#1 expressed that when he/she entered the warehouse, every employee, all of whom appeared to be Asian men, stopped what they were doing to look at him/her. CS#1 stated that he/she didn't believe any of the employees that he/she saw spoke English.

15.     **Shipment #3** - On April 18, 2023, U.S. Customs and Border Protection (CBP) officers assigned to the Los Angeles International Airport (LAX) intercepted an inbound shipment manifested as "Charger." The shipment originated from China and was ultimately destined to Hiyes+16450, 8400 Industrial Parkway Ste C, Plain City, OH 43064, with listed telephone number 614-558-0198. Upon inspection, CBP Officers found a mis-manifested shipment which contained approximately 121.61 kg (268.104 pounds) of a white powdery rock-like substance which field tested positive for N, N Dimethylpentylone Hydrochloride, a Schedule I controlled substance.

16.     Between March 15, 2023, and April 18, 2023, The U.S. Department of Homeland Security (DHS) has seized a total of approximatley 296.62 kilograms (653.94 pounds) of N, N

6

Dimethylpentylone Hydrochloride, a Schedule I controlled substance, all of which was being shipped from China to a company called Hiyes+16450, located at 8400 Industrial Parkway Ste C, Plain City, OH 43064. All three shipments were mis-manifested in an apparent effort to conceal what was actually inside each shipment. Investigators have been unable to locate a legitimate business called Hiyes+16450 or any variation of Hiyes located at this location or currently incorporated in the State of Ohio.

17.    Additionally, as mentioned above, between September 26, 2022, through April 19, 2023, there were 848 shipments originating from China or Hong Kong being shipped to Hiyes or a variation of Hiyes at 8400 Industrial Parkway Ste C, Plain City, OH 43064. Due to the fact that three shipments, between March and April 2023, to Hiyes have been found to contain large amounts of N, N Dimethylpentylone Hydrochloride, a Schedule 1 controlled substance, investigators believe there is probable cause to believe that at least some of the previous shipments to 8400 Industrial Parkway Ste C, Plain City, OH 43064 likely also contained the same controlled substance.

18.    Based upon my training and experience, I know it is common for drug traffickers to use legitimate businesses to facilitate illegal actvities including narcotics smuggling, distribution of those narcotics, and money laundering. These individuals will often use their legitimate business operations to provide a layer of concealment in which they can then integrate and disguise their illegal acitvities. These individuals will also routinely use fake or old companies (shell companies) to ship their narcotics in an effort to protect their legitimate company.

7

## TECHNICAL TERMS

19.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Internet:  The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

    b.  Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

    c.  Personal Identifiable Information:  Information about an individual that identifies, links, relates, or is unique to, or describes him or her, e.g., a social security number; age; military rank; civilian grade; marital status; race; salary; home phone numbers; other demographic, biometric, personnel, medical, and financial information, etc.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

20.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the Premises, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other

8

storage media. Thus, the warrant I am applying for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, under Rule 41 (e)(2)(B).

21. I submit that if a computer or storage media is found on the Premises, there is probable cause to believe business records, including records regarding shipments containing illegal narcotics, will be stored on that computer or storage media, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that businesses use computers and online tools to order, track, and inventory shipments. After viewing the tracking labels on the three shipment's which were found to contain N, N-Dimethylpentylone, (Schedule I controlled substance), investigators observed tracking numbers which the receiver can use to track current location and expected delivery date of the packages.

    b. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    c. Therefore, deleted files, or remnants of deleted files, may reside in free

9

space or slack space - that is, in space on the storage medium that is not currently being used by an active file - for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

d.  Wholly apart from user-generated files, computer storage media - in particular, computers' internal hard drives - contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

e.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22.  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the Target Offenses, but also forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on computers or storage media at the Premises because:

a.  Data on the storage media can provide evidence of a file that was once

10

on the storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. Forensic evidence on a computer or storage media can also indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage media at a relevant time.

11

    c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage media that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage media. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

23.    In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image or copy of storage media. Generally

12

speaking, imaging is the taking of a complete electronic picture of the computer's data, including 11 hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b. Computers can be configured in different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-

13

site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

24. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

25. Fortune Star International Trade & Logistics Inc., Excel Logistics Inc and/or Hiyes appears to be a functioning company engaged in an ongoing business. In executing this search warrant, law enforcement personnel will attempt to perform an on-site search or make an on-site copy of computers and electronic storage media within a reasonable amount of time. If such a search or copy is not practicable, then the computers and electronic storage media will be seized and transported to an appropriate law enforcement laboratory for review. If the Government determines that computers or electronic media are not subject to seizure pursuant to Fed. R. Crim. P. 41(b), the Government will return these items within a reasonable period of time. However, any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not: (a) an

instrumentality of the offense; (b) a fruit of the criminal activity; (c) contraband; (d) otherwise unlawfully possessed; or (e) evidence of the Target Offenses.

<b><u>CONCLUSION</u></b>

26.     Based on my training, experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. § 952(a) – Importation of a Controlled Substance, has been committed at 8400 Industrial Parkway, Suite C, Plain City, Ohio 43064.

27.     Based on the facts set forth herein, I respectfully request that a search warrant be issued authorizing law enforcement personnel to search 8400 Industrial Parkway, Suite C, Plain City, Ohio 43064, which is located within the Southern District of Ohio and described in Attachment A, for evidence, instrumentalities, contraband and/or fruits of this crime further described in Attachment B.

Respectfully submitted,

_____

Ryan Marvich
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on April 24, 2023:

Kimberly A. Jolson
United States Magistrate Judge